UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| BRENT JAMES NASH,<br><br>Plaintiff,<br><br>v.<br><br>A. BRYCE, *et al.*,<br><br>Defendants. | Case No. 22-10258<br>Honorable George Caram Steeh<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [ECF NO. 32]**

## I.    Introduction

Plaintiff Brent James Nash, a prisoner of the Michigan Department of
Corrections (MDOC), filed this pro se civil rights action under 42 U.S.C.
§ 1983, alleging that Defendants Calvin Turner and Austin Bryce used
excessive force in violation of the Eighth Amendment.  ECF No. 1.  The
Honorable George Caram Steeh referred the case to the undersigned for
all pretrial matters under 28 U.S.C. § 636(b)(1).  ECF No. 13.  Defendants
move for summary judgment.  ECF No. 32.  The Court **RECOMMENDS**
that defendants' motion be **GRANTED**.

## II.    Background

Nash's excessive force claim against defendants, who were MDOC corrections officers, arose from an April 2021 incident.  While housed at the St. Louis Correctional Facility, Nash fought another prisoner.  ECF No. 36-2, PageID.27; ECF No. 32-6, Attach. E, HU 6 Wing Base Video. Defendants then handcuffed Nash and tried to escort him through a hallway and across a yard to the segregation unit.  ECF No. 36-2, PageID.270; ECF No. 32-7, Attach. F, HU 6 A Wing Dayroom Video; ECF No. 32-8, Attach. G, HU 6 Cent Yard Video.  They struggled with Nash and restrained him on the ground when they entered the yard.  ECF No. 32-8, Attach. G, HU 6 Cent Yard Video at 0:06-0:47.  Nash testified that defendants slammed him face first onto the concrete, causing him several facial injuries and a fractured left ankle.  ECF No. 32-2, PageID.118; ECF No. 36-1, PageID.224.

## III.    Analysis

### A.

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court's function at the summary judgment stage "is not to weigh the evidence and

2

determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must specify the portions of the record that show the lack of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies this burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial. *Id.* at 324. The Court must view the factual evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The opposing party "may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. Caresource*, 576 F.3d 551, 558 (6th Cir. 2009) (cleaned up). "[T]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." *Id.* (cleaned up). "Conclusory statements unadorned with supporting facts are

insufficient to establish a factual dispute that will defeat summary judgment."  *Id.* at 560.

**B.**

Whether summary judgment should be granted on excessive force claims turns on an assessment of subjective and objective components. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014).  The subjective component addresses the officials' state of mind, and whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Id.* (cleaned up).  To determine whether the subjective component is met, courts consider (1) the need for the use of force, (2) whether the force used was proportional to the need for force, (3) the extent of the plaintiff's injuries, (4) the threat reasonably perceived by the prison official, and (5) efforts made to temper the severity of the force. *Id.* at 581.

"The objective component requires the pain inflicted to be sufficiently serious.  This component requires a contextual investigation, one that is responsive to contemporary standards of decency."  *Id.* at 580 (cleaned up).  While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it does not resolve whether an Eighth Amendment violation occurred.  *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

Defendants said that Nash pulled away from them and they used only the force necessary to restrain an actively resisting prisoner.  ECF No. 32, PageID.101.  Bryce testified that as defendants escorted the handcuffed Nash down the hallway, he was moving quickly, "swaying back and forth, pulling as [they] were going," and "walking like someone that is actively resisting."  ECF No. 32-3, PageID.136-137.  Bryce said that he commanded Nash to stop resisting and to slow down.  ECF No. 36-2, PageID.382.  Turner did not complain about the way that Nash walked, but he said that Nash was "flailing" to get loose from them.  ECF No. 36-3, PageID.349, 362-363.  And Turner testified that Bryce "told [Nash] he was going to escort him to the ground if he continued [to pull away]."  *Id.*, PageID.363-365, 372.

As defendants approached the door to the yard, Nash began to lean his body forward, pulling them off-balance.  *Id.*, PageID.350; ECF No. 32-3, PageID.139.  When defendants reached their hands to open the door, they started losing their grip on Nash.  ECF No. 36-2, PageID.281; ECF No. 36-3, PageID.351, 354, 382.  Defendants said that as they stepped through the door and into the yard, Nash tried to pull away, "lunging," and they believed that they needed to take him to the ground to gain compliance and

reposition their hands.  ECF No. 36-2, PageID.286; ECF No. 36-3, PageID.367, 371, 382.

Right before the takedown, Bryce thought that Nash would spit on him; Nash had quickly turned toward him.  ECF No. 32-3, PageID.139; *see* ECF No. 32-4, PageID.151.  From Turner's perspective, Nash pulled away and then "threw his head back one time, almost hit[ting] Bryce in the nose." ECF No. 36-3, PageID.352.  Turner then followed Bryce's lead as Bryce performed the takedown.  *Id*.

Nash's version of events differs.  He testified that as defendants escorted him down the hallway, they bent his arm up behind his back, causing him to bend forward while he walked.  ECF No. 32-2, PageID.117. Nash said that as defendants escorted him through the door to the yard, he tried to pull his arm back to the "normal position."  *Id.*, PageID.118. Defendants then slammed him "face-first onto the cement," injuring his face and ankle.  *Id.*  Nash did not recall defendants saying anything to him.  ECF No. 36-1, PageID.221.

Defendants submit three surveillance videos of the incident.  The first video shows Nash—dressed in a white shirt and red shorts—hit another prisoner in the head with a food tray.  ECF No. 32-6, Attach. E, HU 6 Wing Base Video.  After multiple officers restrained Nash on the ground and

6

handcuffed him behind his back, Nash stood, flanked by defendants holding his arms on either side.  *Id.* at 1:25-27.  Bryce was on Nash's left, and Turner was on his right.  ECF No. 36-2, PageID.303; ECF No. 36-3, PageID.370.  Defendants waited for other officers to escort the prisoner victim away, and then they followed with Nash.  ECF No. 32-6 at 1:28-1:50.

The second video shows defendants escorting Nash down the hallway to the outdoor yard.  ECF No. 32-7, Attach. F, HU 6 A Wing Dayroom Video at 0:10-0:13.  As Bryce, Turner, and Nash neared the door, Nash appeared to start waddling left and right as he walked.[1]  *Id.* at 0:14-0:17.  Nash then bucked back and forth, and as defendants passed through the doorway, Nash suddenly bent forward.  *Id.* at 0:18-0:21.

The third video shows a yard full of prisoners and a sideview of the door.  ECF No. 32-8, Attach. G, HU 6 Cent Yard Video.  As the door opened, Nash took fast shuffling steps, bending over at his waist and then moving his body upward.  *Id.* at 0:06-0:09.  Defendants rushed behind Nash, and their arms stretched out to hold onto him.  *Id.* at 0:09.  Nash momentarily turned his head to the left, and—with their backs now to the camera—defendants appeared to turn Nash to the left and swing him into a

---

[1] Nash's back and forth movements are especially visible when compared to the movements of the prisoner victim, who was escorted through the hallway moments before.  *Compare id.* at 0:02-0:09, *with id.* at 0:13-0:20.

takedown on the ground.  *Id.* at 0:09-0:10.  Nash laid prone on the ground

as several other officers rushed to assist.  *Id.* at 0:11-0:47.  The group of

officers then lifted Nash onto his feet and escorted him as he limped across

the yard to the segregation unit.  *Id.* at 0:48-1:44.

At the summary judgment stage, courts must view the evidence as

"depicted by the videotape," and "when opposing parties tell two different

stories, one of which is blatantly contradicted by the record, a court should

not adopt that version of the facts."  *Scott v. Harris*, 550 U.S. 372, 380-81

(2007) (cleaned up).  In the Court's view, the video shows that Nash veered

side to side through the hallway, bent over at the waist suddenly as he

went through the door to the yard, and took fast shuffling steps as

defendants followed him outside.  The video corroborates defendants'

testimony that they took Nash down because he was actively pulling away

from them and they started losing their grip on him.  ECF No. 36-2,

PageID.281, 286; ECF No. 36-3, PageID.351, 354, 367, 371, 382.  Thus,

there is no genuine dispute that defendants had a reasonable basis for

using some force against Nash.

The next question is whether defendants had a reasonable basis for

the force used.  Nash likens his case to *Cordell*, in which the Sixth Circuit

found that a jury could find that the officer acted with malicious and sadistic

intent to injure the prisoner.  759 F.3d at 581.  An officer had pushed the handcuffed plaintiff headfirst into a concrete wall after the plaintiff turned to face the officer.  *Id*.  In assessing the officer's reason for force, the *Cordell* court first looked at the severity of the prisoner's injuries: he had bloody lacerations, needed stitches, suffered from whiplash, and developed chronic pain syndrome.  *Id.* at 582-583.  The court found that Cordell did not present a sufficient threat to justify the extreme use of force, noting that he was handcuffed behind his back and surrounded only by other corrections officers in the hallway.  *Id.* at 583.  Last, the court found that the officer did not moderate the force that he used.  *Id.* at 583-584.  The officer aggressively escorted Cordell, was in an agitated state, and did not contest a written reprimand for excessive use of force in the incident.  *Id.* at 584.

This case is distinguishable from *Cordell*.  The parties agree that Nash's injuries are more than *de minimis*.  ECF No. 32, PageID.106.  Nash suffered fractures in two parts of his left ankle and abrasions on his face.  ECF No. 36-1, PageID.224; ECF No. 36-4, PageID.415-416; ECF No. 1-1, PageID.25-27.  "The use of force, while certainly not dispositive, makes it more likely that [defendants] acted with malice."  *Cordell*, 759 F.3d at 583.

But a reasonable jury would not conclude that defendants' use of force was a malicious and sadistic attempt to inflict injury.  Corrections

9

officers do not violate a prisoner's Eighth Amendment rights when they use force "in a good-faith effort to maintain or restore discipline." *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (cleaned up). Because corrections officers "must make their decisions in haste under pressure, and frequently without the luxury of a second chance, the issue is not whether the use of force was absolutely necessary in hindsight, but whether the use of force could plausibly have been thought necessary." *Cordell*, 759 F.3d at 581 (cleaned up). And "while judges may review an encounter by slowing down, pausing, and replaying a video, officers have no such luxury. They must make quick decisions in the heat of the moment." *Johnson v. Sootsman*, 79 F.4th 608, 618 (6th Cir. 2023). Thus, courts "defer to [officers'] decisions and avoid 'unreasonable *post hoc* judicial second-guessing' of their conduct.'" *Id.* (cleaned up).

If a prisoner pulls away from officers' control, "a reasonable officer in the shoes of the Defendants would have likely considered the risk to staff, other inmates, and property and made a split-second decision to apply force in order to abate those risks." *Butler v. Trett*, No. 619CV00187GFVTEBA, 2021 WL 5218537, at *6 (E.D. Ky. July 15, 2021), *adopted*, 2021 WL 3913570 (E.D. Ky. Sept. 1, 2021). And "[a]n inmate attempting to run away from staff would be the exact type of situation in

which a good faith application of force is necessary to maintain order and restore discipline." *Id.* (cleaned up).

Nash, like Cordell, was handcuffed during an escort when the incident occurred.  But unlike Cordell, Nash was not in an indoor jail hallway with only corrections officers present.  *See Cordell*, 759 F.3d at 583.  Nash had entered an outdoor yard filled with prisoners when he pulled his arm away from defendants, causing them to lose their grip on him.  ECF No. 36-3, PageID.382; ECF No. 32-8, Attach. G, HU 6 Cent Yard Video.  Turner testified that an out-of-control prisoner poses a "great [safety] risk" to the prison, other prisoners, and corrections officers.  ECF No. 36-3, PageID.382.

In response, Nash argues that defendants should have used de-escalation tactics.  Nash points to Turner's testimony after he reviewed the surveillance video: "[d]eescalation tactics should have definitely been proposed other than the slam."  ECF No. 36, PageID.193; ECF No. 36-3, PageID.377.  But the Court cannot view defendants' split-second actions "in hindsight," *Cordell*, 759 F.3d at 581, and must hesitate to second guess defendants' "quick decisions in the heat of the moment," *Sootsman*, 79 F.4th at 618.  Under the facts here, "a good faith application of force [was]

11

necessary to maintain order and restore discipline." *Butler*, 2021 WL 5218537, at *6.

And defendants testified that other methods of restraining Nash—like applying a shoulder pressure point or making him walk backwards—would not have worked.  ECF No. 36-2, PageID.281, 309, 321.  Bryce said those techniques were unavailable because he was losing his grip as Nash swayed back and forth.  *Id*.  And Turner said that turning Nash around was "not ideal"; he did not consider other de-escalation tactics in the moment; and he followed Bryce's lead.  ECF No. 36-3, PageID.372-373.

Given the facts in the record, summary judgment is appropriate.

## C.

Defendants also argue that findings at Nash's misconduct hearing preclude relitigation of whether he actively resisted them.  ECF No. 32, PageID.103.  In some cases, factual findings from major misconduct prison hearings reports have preclusive effects on § 1983 cases.  *Peterson v. Johnson*, 714 F.3d 905, 912-913 (6th Cir. 2013).  In *Peterson*, the Sixth Circuit found that a hearing officer's factual finding that the plaintiff grabbed the corrections officer's hand had a preclusive effect on the plaintiff's Eighth Amendment claim.  *Id*.  At the hearing, the hearing officer listened to testimony and reviewed affidavits and a video of the incident.  The hearing

officer found that the corrections officer did not start the incident and concluded that Peterson was guilty of assault and battery. *Id.* at 909.

The *Peterson* court looked at four factors to determine whether the administrative factual findings were preclusive: (1) whether the state agency acted in a judicial capacity; (2) whether the hearing officer resolved a disputed issue of fact that was properly before him or her; (3) whether the party to be precluded had an adequate opportunity to litigate the factual dispute; and (4) if the other three criteria are satisfied, the finding is given the same preclusive effect as it would be given in state courts. *Id.* at 912-13 (citing *Univ. of Tennessee v. Elliott*, 478 U.S. 788 (1986)). Applying these factors to the major misconduct hearing, the Sixth Circuit concluded that the factual finding that Peterson grabbed the officer's hand "preclude[d] a contrary finding in federal court." *Id.* at 917.

But in *Roberson v. Torres*, the court rejected as overbroad the argument that "any factual findings by a hearing officer in a major-misconduct hearing in a Michigan prison are to be accorded preclusive effect." 770 F.3d 398, 404 (6th Cir. 2014). "*Peterson* is not a blanket blessing on every factual finding in a major-misconduct hearing." *Id*. The Sixth Circuit declined to decide the question of preclusion and remanded it to the district court to give "particular attention to the fairness and accuracy

13

of the factual findings made by the major-misconduct hearing officer." *Id.* at

405.  The court specified that the district judge should consider "why the

hearing officer refused to review the alleged video of the incident, whether

the hearing officer provided a sufficient and reasonable basis for her factual

findings, and whether the testimony of other witnesses corroborated the

accounts provided by either Roberson or [the corrections officer]." *Id.*

After considering the fairness of the misconduct hearing here and the

accuracy of the factual findings from that hearing, the Court agrees with

defendants that Nash should not be allowed to relitigate whether he

resisted defendants.

Nash was charged with Class I major misconducts for assault and

battery of prisoner and staff victims.  ECF No. 32-5, PageID.155.  The

administrative law judge (ALJ) reviewed the three surveillance videos,

timestamped descriptions of the videos, witness statements, hearing

investigation reports, memoranda from corrections officers, and

photographs and reports of Nash's injuries.  *Id.*, PageID.155, 157, 159-168.

Nash attended and testified at the hearing, pleading not guilty.  *Id.*,

PageID.155, 157.  The ALJ summarized the evidence showing that Nash

resisted defendants:

> [A]fter the restraints were placed [on Nash], the prisoner
> continued to resist by pulling away, walking side to side, and

14

then turning around towards the escorting officers, and these actions interfered with the officers' attempts to restrain and escort him from the unit. At the hearing, the prisoner claimed, "I don't how I was supposed to pull away from them when they broke my ankle."[] The ALJ finds the prisoner's claim not credible. Video showed the prisoner had a normal gate [sic], was able to move his feet and ankles around, and was fully weightbearing on both his feet until after the prisoner pulled away from, and turned towards, the officers and the officers had to place him on the ground to gain control of him. After which time, he appeared to have a limp.

*Id.*  The ALJ held that Nash "physically resisted the officers' attempts to restrain him and escort him."  *Id.*

The facts and findings meet the requirements under Sixth Circuit caselaw for issue preclusion.  At the hearing, the ALJ acted in a judicial capacity and resolved the disputed question of whether Nash resisted defendants.  *Id.*, PageID.158.  Nash had a strong incentive to litigate whether he resisted defendants because he risked weeks in detention and loss of privileges.  And the hearing decision was supported by the fulsome evidence considered by the ALJ, including the videos.  Nash had the right to fully participate in the hearing, but the misconduct hearing report notes that he was uncooperative with the prison investigator and declined to "request witnesses, submit questions, or request evidence."  *Id.*, PageID.155.  Nash had the right to appeal the finding within the department and then, if necessary, to state court.  *See Peterson*, 714 F.3d at 913.

15

Nash had a fair hearing and the ALJ's factual findings are consistent with the evidence reviewed by this Court.  Thus, under *Peterson* and *Roberson*, the ALJ's findings that Nash "physically resisted defendants' attempts to restrain and escort him" by "pulling away, walking side to side, and then turning around towards the escorting officers" should not be relitigated.  ECF No. 32-5, PageID.158.

But preclusion "includes only *factual* issues decided by a state agency," not legal conclusions.  *Peterson*, 714 F.3d at 918 (emphasis in original).  Thus, the ALJ's decision has no preclusive effect on the issue of whether defendants used excessive force.  But the finding that Nash was actively resisting defendants buttresses this Court's recommendation that summary judgment of his Eighth Amendment claim be granted.

**D.**

The Court last addresses whether defendants are entitled to qualified immunity.  Qualified immunity applies when, viewing the evidence in a light most favorable to the plaintiff, the defendant did not violate a clearly established constitutional right.  *Est. of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005).  For the reasons stated above, defendants violated no constitutional right, so they have a right to qualified immunity.

16

## IV.    Conclusion

The Court thus **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED** (ECF No. 32).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: January 29, 2024


## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*.*  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains.  Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the

same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections lack merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 29, 2024.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
